# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO. 1:22-CR-00107 |
| Plaintiff, | : | JUDGE BARRETT |
| v. | : | **GOVERNMENT'S TRIAL BRIEF** |
| ANDREW GOLOBIC, | : | |
| Defendant. | : | |

The United States of America, through the undersigned counsel, hereby submits this brief to address specific issues that may arise during trial. Defendant Andrew Golobic is charged in a seven-count indictment with sex trafficking by means of force, fraud, and coercion; obstructing the enforcement of the sex trafficking statute; deprivation of rights under color of law; the destruction, alteration, and concealment of evidence; as well as witness tampering. Specifically, Count One alleges that from in or about May 2018 through June 2020 with the exact dates being unknown, the defendant recruited and enticed a noncitizen under ICE supervision, knowing and in reckless disregard of the fact that means of force, fraud, and coercion would be used to cause her to engage in a commercial sex act, in violation of 18 U.S.C. § 1591(a)(1). Count Two alleges that from in or about June 24, 2020 through at least July 27, 2022, the defendant obstructed, attempted to obstruct, and interfered with the government's sex trafficking investigation, in violation of 18 U.S.C. § 1591(d). Counts Three and Four allege the defendant, while acting under color of law, willfully deprived each charged victim of the fundamental right to bodily integrity by penetrating her vulva with his penis without her consent, in violation of 18 U.S.C. § 242. Count Five alleges that on or about February 5, 2020, the defendant attempted to corruptly persuade and engaged in

misleading conduct toward a different noncitizen under ICE supervision with the intent to hinder, delay, and prevent the communication to a law enforcement officer of information relating to the possible commission of a federal offense. Count Six alleges that on or about June 24, 2020, the defendant knowingly destroyed, altered, and concealed records with the intent to impede, obstruct, and influence the federal investigation. Count Seven alleges that on or about April 29, 2021, the defendant attempted to corruptly persuade and engaged in misleading conduct towards another Deportation Officer with the intent of influencing that Officer's testimony in a federal grand jury proceeding. Trial is scheduled to begin January 8, 2024.

I. **Government Expert Jacqueline Goldstein, MSW, LSW**

Notice of the government's intent to call FBI Supervisory Child/Adolescent Forensic Interviewer Jacqueline Goldstein, MSW, LSW was provided to defense counsel on November 29, 2023. During the status conference on January 5, 2024, defense counsel indicated for the first time that it would seek to exclude her testimony from trial. As described in the notice provided to defense counsel, *see* Attachment A, Goldstein supervises the Spanish Speaking Child/Adolescent Forensic Interviewing (CAFI) Program at the FBI including providing policy and program development, training, and supervision of Spanish speaking CAFls throughout the country. Goldstein also assists and provides training to FBI agents and Task Force Officers in addition to other federal, state, and local agencies in the area of forensic interviewing and victim dynamics in various types of federal crimes. Prior to joining the FBI, Goldstein served as a Forensic Interview Specialist with the Department of Homeland Security, Immigration and Customs Enforcement, Office of Investigations, where she conducted forensic interviews of victims and witnesses of federal crimes, including, but not limited to, child exploitation, human trafficking, sex trafficking, and labor trafficking. Goldstein has nearly two decades of experience working with and

interviewing adult and child victims of sexual abuse and assault, including sex trafficking victims. At trial, we expect Goldstein to explain the ways that victims who have been sexually abused, assaulted, and exploited tend to react and cope during and after these experiences. We expect her to describe the dynamics around the disclosure of abuse and reporting behaviors, including gradual and delayed disclosures, minimization, and recantation; victim behavior at the time of abuse/assault; victim behavior after abuse/assault and/or disclosure; as well as the dynamics of abuse/assault when the perpetrator occupies a position of trust. Goldstein has not been provided with information regarding the charged victims in this case.

The government is unable to determine the basis for the defendant's motion. This type of testimony has routinely been found by courts to be helpful to the jury in cases involving allegations of sex trafficking and assault. *See, e.g.*, *United States v. Bell*, No. CR 17-20183, 2022 WL 1014497, at *2 (E.D. Mich. Apr. 5, 2022) (an expert need not personally examine the victims in a case in order for the expert's testimony to be deemed reliable); *United States v. Bixler*, No. 21-5194, 2022 WL 247740, at *4–5 (6th Cir. Jan. 27, 2022) (observing that expert's testimony in a sex and drug trafficking trial about the physical and psychological impacts of drug dependence "helped the jury contextualize the women's vulnerabilities and understand the power [the defendant] held over them—subjects that likely are beyond an ordinary juror's knowledge or experience"); *United States v. Bryant*, 654 F. App'x 807, 813 (6th Cir. 2016) (concluding that the district court did not abuse its discretion in admitting the testimony of an expert in sex trafficking); *United States v. Warren*, 774 F. App'x. 778, 782 (4th Cir. 2019) (testimony "about the typical human trafficking experiences of its victims and the common behaviors of traffickers ... aided the jury in better understanding some of the concepts and events described by the [human trafficking] victim"; "[w]ithout [such] testimony, the jury would have had no way of determining whether the

victim's experiences were common, unique, or implausible" and "explained why others might have chosen to not testify").

Although defense counsel has asked for a hearing outside the presence of the jury (presumably during trial), the government submits that this matter should be resolved prior to voir dire and opening statements. The Court's ruling will have a significant impact on voir dire, opening statements, and anticipated witness testimony.

The defense has had well over a month to raise any concerns about the anticipated testimony. The witness has previously testified in federal court as an expert in human trafficking and victim dynamics, *see, e.g.*, *United States v. Roderick King*, Case No. 21-cr-184 (W.D. Pa. 2022). Moreover, opinion testimony concerning sex trafficking and victim dynamics has been found to be reliable and assist the jury. "[H]olding [a] hearing to address reliability concerns would be … a waste of judicial resources … and concerns regarding the weight of the testimony can be adequately explored during cross-examination." *Bell*, 2022 WL 1014497, at *2. Moreover, the government plans to call Goldstein after the testimony of any testifying victims, thus considerably reducing any prejudice to the defendant. *See United States v. Jackson*, 299 F.R.D. 543, 547 (W.D. Mich. 2014).

## II. Victim Impact Testimony

The government intends to elicit testimony from testifying victims regarding their backgrounds, mental state before, during, and following the assaults, and how the assaults affected and continue to affect them. Testimony regarding a crime's impact on a victim is admissible at trial if it is relevant to prove an element of the charged offense. Because Golobic has been charged with sex trafficking Victim A "by force, fraud, and coercion" and depriving Victims A and B of their fundamental right to bodily integrity, evidence concerning their background, station in life,

physical or mental condition, experiences, education, immigration status, socioeconomic status, age, or any inequalities between the person and the defendant are relevant to the jury's consideration of whether a reasonable person of that same background would have felt coerced under the same circumstances. *United States v. Kozminski*, 487 U.S. 931, 948, 952 (1988) ("The vulnerabilities of the victim are relevant in determining whether the . . . coercion or threats . . . could plausibly have compelled the victim to serve."); *United States v. Djoumessi*, 538 F.3d 547, 552-53 (6th Cir. 2008) (holding that a victim being "fourteen years old . . . here illegally . . . [with] no money or other means of support and no substantial contact with anyone . . . made her more susceptible . . . even if such a threat made to an adult citizen of normal intelligence might be too implausible to produce involuntary servitude."); *see also United States v. Bell*, 761 F.3d 900, 913 (8th Cir. 2014) (upholding admission of evidence regarding victim's particular history because that evidence was relevant in determining whether victims were particularly vulnerable and thus more susceptible to coercion to engage in commercial sex acts). Testimony regarding the impact on the victims is also relevant to whether they felt coerced at the time of its commission. *Florida v. Bostick*, 501 U.S. 429, 438 (1991) ("'Consent' that is the product of official intimidation or harassment is not consent at all. Citizens do not forfeit their constitutional rights when they are coerced to comply with a request that they would prefer to refuse."); *Tyson v. Sabine*, 42 F.4th 508, 513 & n.2 (5th Cir. 2022) (holding, in describing sexual assault by law enforcement officer conducting a welfare check, that it was "obvious" that consent that is "the product of official intimidation or harassment is not consent at all.").

### III.  Admissibility of Defendant's Statements.

A defendant cannot introduce his own self-serving statements. The statements by the defendant (whether verbal, through text messages, social media, or otherwise) are only

5

admissible as an admission of a party opponent under Federal Rule of Evidence 801(d). Statements made to the defendant or in response to the defendant's statements are admissible as non-hearsay to provide context. *See United States v. Alsop*, 12 F. App'x 253, 259 (6th Cir. 2001) (recorded conversations between defendant and witnesses admissible because they place defendant's statements in context and make them intelligible as admissions); *United States v. Jacob*, 377 F.3d 573, 581 (6th Cir. 2004) (same); *United States v. Valenzuela*, 88 F. App'x 909, 913 (6th Cir. 2004) (same); *United States v. Henderson*, 626 F.3d 326, 337 (6th Cir. 2010) (same). The government will also submit communications from others to the defendant to show the effect they had on the defendant or to show the defendant's knowledge and intent. *See Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 379 (6th Cir. 2009) ("A statement that is not offered to prove the truth of the matter asserted but to show its effect on the listener is not hearsay."); *United States v. Boyd,* 640 F.3d 657, 664 (6th Cir. 2011) ("Statements offered to prove the listener's knowledge are not hearsay."). Although these response messages certainly "support an inference that [defendant] was involved" in the charged offenses, "[t]his inference, however, does not depend on the [message senders'] truthfulness, memory, or perception—the core credibility concerns that lie behind the hearsay rule." *Rodriguez-Lopez,* 565 F.3d 312, 314–15. These response messages are thus admissible. *See United States v. Churn*, 800 F.3d 768, 775–76 (6th Cir. 2015) (email responses admissible because "the statements were not [being admitted to show that] what the other person actually said is true or not, but to explain the basis of this witness's state of mind, to explain what this witness was doing") (internal quotation marks omitted); *United States v. Gibbs*, 680 F. App'x 184, 186 (4th Cir. 2017) ("[Defendant's] outgoing messages were admissible under Fed. R. Evid. 801(d)(2)(A), and the incoming messages were admissible to show their effect on [the defendant]."). Because these party-opponent admissions

6

and non-hearsay responses are not hearsay by definition, they do not implicate the Confrontation Clause and *Crawford v. Washington*. *See United States v. Cromer*, 389 F.3d 662, 676 (6th Cir. 2004) ("Because the statements were not offered to establish the truth of the matter asserted, the Confrontation Clause does not apply."); *accord United States v. Pugh*, 273 F. App'x 449, 455–56 (6th Cir. 2008). Consequently, entire text, WhatsApp, and Facebook exchanges as well as excerpts that will be offered by the government are admissible. In contrast, a defendant cannot elicit or introduce his own self-serving statements on cross-examination or in his case-in-chief, when offered for the truth. *United States v. McDaniel*, 398 F.3d 540, 545 (6th Cir. 2005) (district court correctly barred defendant from introducing his own statements through cross-examination).

IV.     **Defendant's Witnesses**

It is unclear whether the defendant intends to call witnesses and if so, whether any of the potential defense witnesses have personal knowledge about any of the events in question. Testimony about matters not directly relevant to the charged offenses including matters significantly predating or postdating the events in question may fall into character testimony or is irrelevant and should be excluded under Rule 401. To the extent the defendant seeks to introduce evidence of good character, the government anticipates it will offer evidence to rebut such testimony consistent with Rule 404(a)(2)(A) of the Federal Rules of Evidence. Moreover, the government notes that good character testimony must be cabined within the limits of Federal Rules of Evidence 404(a)(2)(A) and 405.

V.      **Testimony by the Defendant**

If the defendant elects to testify, the government anticipates that it may inquire on cross examination regarding specific instances of his conduct in order to attack his character for truthfulness consistent with Rule 608(b) of the Federal Rules of Evidence. Extrinsic evidence

offered for other grounds of impeachment (such as contradiction, prior inconsistent statement, bias and mental capacity) may be offered subject to Rules 402 and 403.

## VI. *Res Gestae* Evidence

*Res gestae*, or background evidence, is admissible "in limited circumstances when the evidence includes conduct that is 'inextricably intertwined' with the charged offense[s]." *United States v. Clay*, 667 F.3d 689, 697 (6th Cir. 2012). "[D]efendants are not entitled to a 'sanitized' recounting of the facts, and prosecutors are not restricted to proving only discrete elements of a crime in such a way that they would be unable to offer the jury a natural narrative of the events." *United States v. Gibbs*, 797 F.3d 416, 424 (6th Cir. 2015). Agent testimony relating to the steps taken to identify victims is admissible background evidence and is necessary to provide the complete context of the investigation. This evidence has a causal connection with the charged offenses, including the defendant's efforts to obstruct the investigation; forms an integral part of the witnesses' testimony; and completes the story of the charged offenses.

## VII. Willfulness Evidence

Because the deprivation of rights under color of law counts require the government to prove willfulness, the government will be presenting among other evidence, evidence concerning statements he made about female ATD participants, Latinas, and women more generally; as well as testimony and evidence concerning the defendant's training and related ICE policies. Notably, this evidence would be admissible to show that Golobic acted with the specific intent required to violate the statutes charged in the Indictment and with the knowledge that his actions were unlawful. *United States v. Hardy*, 643 F.3d 143, 151 (6th Cir. 2011). Because this evidence is highly probative of an element of several of the offenses charged, admission of such evidence will

not unfairly prejudice the defendant at trial. The government is proposing limiting instructions to mitigate against any potential prejudice.

## VIII. Prior Consistent Statements

A prior consistent statement is admissible in two circumstances: (1) if it is offered "to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying," Fed. R. Evid. 801(d)(1)(B)(i); and (2) if it is offered "to rehabilitate the declarant's credibility as a witness when attacked on another ground." *Id.* at 801(d)(1)(B)(ii).

To admit prior consistent statements under Rule 801(d)(1)(B)(i), four requirements must be met: (1) the declarant must testify and be subject to cross examination; (2) there must be an express or implied charge of recent fabrication or improper influence or motive by the declarant during his or her testimony; (3) the prior statement must be consistent with the declarant's challenged in-court testimony; and (4) the prior consistent statement must have been made before the alleged motive to lie arose. *See United States v. Trujillo*, 376 F.3d 593, 611 (6th Cir. 2004).

To admit a prior consistent statement under Rule 801(d)(1)(B)(ii), the consistent statement must be offered to rehabilitate a declarant's credibility as a witness when attacked on a ground <u>other than</u> recent fabrication or improper influence or motive. Fed. R. Evid. 801(d)(1)(B)(ii). This provision of Rule 801 was added in 2014 to expand the admissibility of prior consistent statements. *See* Fed. R. Evid. 801 (Advisory Committee Notes to 2014 Amendments) ("The intent of this amendment is to extend substantive effect to consistent statements that rebut other attacks on a witness – such as charges of inconsistency or fault memory."). Therefore, if at trial a defendant attacks a government witness's credibility on a ground other than recent fabrication, improper influence, or motive, the Court should permit the government to admit a prior consistent statement

to rehabilitate credibility. *See United States v. Cox*, 871 F.3d 479, 487 (6th Cir. 2017) (prior consistent statement admissible where the defendant attacked the witness's credibility on the basis of faulty memory).

Respectfully submitted,

KENNETH L. PARKER
United States Attorney


*s/Ebunoluwa A. Taiwo*
EBUNOLUWA A. TAIWO (DC 1030215)
ASHLEY N. BRUCATO (0090989)
Assistant United States Attorneys
221 East Fourth Street, Suite 400
Cincinnati, Ohio 45202
(513) 684-3711


**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Government's Trial Brief was filed electronically this 5th day of January, 2024, and served upon all counsel of record via the Court's CM/ECF system.

*s/Ebunoluwa A. Taiwo*
EBUNOLUWA A. TAIWO (DC 1030215)
Assistant United States Attorney